In re Rogelio SUAREZ, Debtor.

Rogelio SUAREZ and Robert L. Roth, Trustee, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 93–14505–BKC–AJC. Adv. No. 94–0338–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

April 17, 1995.

**918**

Jordan E. Bublick, North Miami, FL, for debtor.

Mark Stier, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

### MEMORANDUM DECISION ON COMPLAINT TO DETERMINE EXTENT, VALIDITY, AND PRIORITY OF CLAIMS

A. JAY CRISTOL, Chief Judge.

**THIS CAUSE** came before the Court on August 15, 1994 on Plaintiffs', Rogelio Suarez and Robert L. Roth, Trustee, Second Amended Complaint to Determine Extent, Validity, and Priority of Liens of the United States of America (hereinafter "IRS") for Federal Income Taxes, Penalties and Interest, and Complaint to Avoid Liens, if Any. The matter is before the Court on the stipulated facts as set forth in the agreed Pretrial Order, entered on August 3, 1994, and the exhibits submitted by both parties.

Plaintiffs seek a determination by the Court that the IRS does not hold a lien on any of the property of the estate or property of the debtor, or in the alternative, to the extent that the IRS may hold a lien on any property of the estate, such lien is avoidable.

### AGREED UPON FACTS

1. On September 17, 1979, Debtor and his now-former wife, Magaly Suarez, purchased the real property located at 1424 S.W. 17th Terrace, Miami, Florida (hereinafter "the Property"). Such real property is more completely described as:

> Lot 8, Block 5 of Parkway Addition, as recorded in Plat Book 41 at Page 77 of the Public Records of Dade County, Florida.

2. On July 3, 1990 Plaintiff, Rogelio Suarez, filed for divorce from his wife Magaly Suarez, Case No. 90–31995 FC (26), Circuit Court of the 11th Judicial Circuit in an for Dade County, Florida.

3. The dissolution case was bifurcated for hearing between non-economic issues and economic issues. The non-economic issues were disposed of in a Final Order dated August 8, 1991. The economic issues, including the issue of awarding property, were disposed of in a Final Order on General Master's Concluding Report and Judgment on all Economic Issues (hereinafter "Final Order") dated December 2, 1991.

4. The Final Order of December 2, 1991 stated in pertinent part:

> [T]hat the Court … grants the Petitioner/Husband the exclusive occupancy, possession, and ownership of the former mari-

tal home with the Wife to execute a Quit Claim Deed to the Husband of all her right, title, and interest in said real property located at 1424 S.W. 17th Terrace, Miami Florida ... forthwith with the Husband to be thereafter responsible for the Internal Revenue Service lien, the existing mortgage and all other encumbrances on said real property. (emphasis provided) (¶ 3 of Final Order).

5. The Final Order was recorded December 4, 1991 in the Official Records of Dade County, Official Records Book 15290, Page 2643.

6. The following federal income taxes were assessed against both Rogelio Suarez and Magaly Suarez jointly:

| Tax Year | Date Assessed | Amount Owed |
|---|---|---|
| 1984 | 12–16–91 | $2,790.22 |
| 1985 | 11–25–91 | $4,213.50 |
| 1986 | 12–02–91 | $2,051.01 |
| 1987 | 02–24–92 | $ 575.82 |
| 1988 | 11–11–91 | $4,649.50 |

7. The following federal income taxes were assessed against Rogelio Suarez individually:

| Tax Year | Date Assessed | Amount Owed |
|---|---|---|
| 1989 | 11–11–91 | $6,049.04 |
| 1990 | 12–09–91 | $3,074.03 |
| 1991 | * 1 | $2,981.00 |

8. On June 17, 1993, Magaly Suarez delivered a quit-claim deed of her interest in the Property to Rogelio Suarez. The quit-claim deed was recorded on November 30, 1993.

9. On November 16, 1993, Rogelio Suarez filed a Chapter 13 petition for bankruptcy.

10. On November 17, 1993, the IRS filed its Notice of Tax Lien in the Public Records of Dade County, Florida pursuant to 26 U.S.C. Section 6323 ("I.R.C. 6323") as to the income tax assessments against Rogelio Suarez and Magaly Suarez for tax years 1984, 1985, 1986, 1987, and 1988.

11. On November 17, 1993, the IRS filed its Notice of Tax Lien in the Public Records of Dade County, Florida pursuant to 26 U.S.C. Section 6323 as to the income tax assessments against Rogelio Suarez individually for tax years 1989 and 1990.

12. On December 9, 1993, the IRS filed its "Notice of Inadvertently Filed Notice of Federal Tax Lien," which acknowledged that the two notices of federal tax lien filed on November 17, 1993 were mistakenly filed, in violation of the automatic stay. In its December 9th Notice, the IRS claimed that such notification "does not release the lien imposed by I.R.C. 6321."

13. On January 28, 1994, the IRS filed an amended proof of claim declaring general unsecured claims for tax years 1984–1990 in the sum of $30,904.49; and unsecured priority claims for tax years 1990 and 1991 in the sum of $6,836.16.

14. The Court takes judicial notice of Debtor's Schedules wherein Debtor claims the Property as his exempt homestead.

### APPLICABLE LAW AND DISCUSSION

A tax lien in favor of the United States arises by operation of law if a person is unable to pay a tax liability after demand is made for payment.[2] This general tax lien is perfected as to the taxpayer without the filing of a Notice of Federal Tax Lien.[3] However, before a tax lien will be effective against certain third parties, a Notice of Federal Tax Lien must be recorded. Specifically, I.R.C. § 6323(a) provides that the lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f).[4]

1. No assessment was made as of the Petition date for the 1991 tax year.

2. This general tax lien of I.R.C. § 6321 is referred to as a "secret lien" because it arises as a matter of law against the taxpayer without the necessity of the filing of a Notice of Federal Tax Lien. *Stevan v. Union Trust Co.,* 316 F.2d 687 (D.C.Cir.1963). The lien attaches to "all property and rights to property, whether real or personal, belonging to such person," even if some of

that property cannot be seized by the IRS due to applicable exemptions. I.R.C. § 6321.

3. 1A Collier on Bankruptcy 15th Ed. P 11.04 (1994); I.R.C. Section 6323(a); *see also, In re May Reporting Servs.,* 115 B.R. 652 (Bankr. D.S.D.1990).

4. After a taxpayer files a title 11 petition, the presence or absence of a recorded Notice of Federal Tax Lien will control how the IRS's

Plaintiffs argue that pursuant to 26 U.S.C. 6323(a), the IRS does not hold a lien on the Property since Debtor constitutes both a "purchaser" and "judgment lien creditor" under the applicable definitions, and, therefore, the federal tax liens are not valid. In the alternative, Plaintiffs argue that if the Court determines the IRS holds a valid lien on the Property, such lien is avoidable pursuant to 11 U.S.C. Sections 545(2), 544(a)(1), 544(a)(2), and/or 544(a)(3).

### A. DOES THE IRS HOLD A VALID LIEN UNDER I.R.C. SECTION 6323?

In this case, the tax liens arose on the dates of assessment. However, the liens were not recorded until November 17, 1993, almost two years after the conveyance to Debtor. Therefore, whether the liens may be enforced against the property now owned by Debtor turns on whether his interest falls within one of the four exceptions enumerated in § 6323. Since Debtor clearly is neither a mechanic's lienor not the holder of a security interest in the property, he is entitled to relief under § 6323(a) only if he qualifies as a purchaser or judgment lien creditor. *United States v. Brynes*, 848 F.Supp. 1096 (D.R.I. 1994).

### 1. PURCHASER

■ Section 6323(h)(6) defines purchaser as follows:

> (6) **Purchaser.** The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. (emphasis added).

Thus, a "purchaser," as defined under 6323(h)(6), will take property free and clear of federal tax liens imposed against the property if no Notice of Federal Tax Lien has been filed in accordance with the statute.

■ The IRS argues that Debtor does not constitute a purchaser because the conveyance by Magaly Suarez to Debtor was not "valid under local law," since the deed for the conveyance was not recorded until November 30, 1993, after the Notices of Federal Tax Lien were filed on November 17, 1993. The Court disagrees.

Florida Statute Section 61.075(4) provides that a judgment distributing marital assets:

> "shall have the effect of a duly executed instrument of conveyance, transfer, release or acquisition which is recorded in the county where the property is located when the judgment or a certified copy of the judgment is recorded in the official records of the county in which the property is located."

Further, Florida Rule of Civil Procedure 1.570(d) provides:

> "if a judgment is for a conveyance, transfer, release, or acquittance of real or personal property, the judgment shall have the effect of a duly executed conveyance, transfer, release, or acquittance that is recorded in the county where the judgment is recorded."

Magaly Suarez's interest in the property was conveyed to Debtor upon recordation of the Final Order in the Official Records of Dade County, Florida on December 4, 1991. *Fla.Stat.* Section 61.075(4) (1994); Fla. R.Civ.P. 1.570(d). The recording of this instrument perfected transfer of title to Debtor as of December 4, 1991. The delivery of the quitclaim deed dated June 17, 1993 from Magaly Suarez to Debtor which was recorded on November 30, 1993 was not dispositive. Her interest already had been conveyed upon recordation of the Final Order. *Fla.Stat.* Section 61.075(4) (1994); Fla.R.Civ.P. 1.570(d). The conveyance from Magaly Suarez to Debtor was "good and effectual" under Florida's recording statute since the Final Order conveying the property was "recorded according to law." *Fla.Stat.* Section 695.01.

claim is treated in bankruptcy. If a Notice of Federal Tax Lien is recorded, the IRS is a secured creditor and the priority rules of § 507(a)(8) are inapplicable to that secured claim. *In re Reichert*, 138 B.R. 522 (Bankr. W.D.Mich.1992). If, however, a Notice of Feder-

al Tax Lien is not recorded before the Petition date, the IRS's claims are unsecured claims governed by § 507(a)(8) and may be avoided. *Olson v. United States (In re Olson)*, 154 B.R. 276, 280 (Bankr.D.N.D.1993). The IRS does not dispute that its claims are unsecured.

■ The main issue, the Court believes, in determining whether Debtor is a purchaser under § 6323(a), is whether Debtor acquired his interest in the property "for adequate and full consideration in money or money's worth." 26 U.S.C. § 6323(h)(6). The regulations promulgated pursuant to that section describe "adequate and full consideration" as consideration that bears a "reasonable relationship to the true value of the interest in the property acquired." 26 C.F.R. § 301.6323(h)–1(f)(3). The term "money or money's worth" includes money, tangible or intangible property, services, and other consideration reducible to a money value. A relinquishment or promised relinquishment of marital rights is not a consideration in money or money's worth. 26 C.F.R. § 301.6323(h)–1(a)(3). The validity of the latter provision is at least debatable since like the relinquishment of any other valuable legal right, a waiver of alimony has been recognized as consideration. *United States v. Brynes,* 848 F.Supp. 1096 (D.R.I.1994). *See,* e.g., *Law v. United States,* 83–1 U.S. Tax Cas. (CCH) ¶ 13,514, 51 A.F.T.R.2d (P–H) ¶ 83–1343 (N.D.Cal.1982). Moreover, there is nothing in the statute indicating that Congress intended to exclude a bona fide waiver of alimony from the definition of consideration or to delegate to the Treasure Department the authority to create such an exclusion. *United States v. Brynes,* 848 F.Supp. 1096 (D.R.I.1994). The Final Order, however, purports only to grant the marital property to Debtor. While Debtor requested in his Petition for Dissolution of Marriage that he be awarded full possession and ownership of the former marital home "as lump sum alimony," the General Master's Concluding Report (ratified and approved in the Final Order) provided "[t]hat neither party be awarded alimony of any kind or description." Nowhere is "consideration" or the granting of alimony mentioned.

The Court is of the opinion that the subject real property was awarded to Debtor to compensate him for relinquishing his marital rights, and therefore was not purchased "for

adequate and full consideration in money or money's worth" as required by § 6323(a) and consistent with the regulations quoted above. *Simpson v. United States,* 1989 WL 73212 (M.D.Fla.1989); *Harris v. United States,* 588 F.Supp. 835 (N.D.Tex.1984), *aff'd,* 764 F.2d 1126 (5th Cir.Tex.1985); *United States v. Brynes,* 848 F.Supp. 1096 (D.R.I.1994). Accordingly, Debtor is not a "purchaser" within the meaning of § 6323(h)(6).

### 2. *JUDGMENT LIEN CREDITOR*

■ As discussed above, the lien created by Section 6321 arises at the time of assessment and attaches to all the taxpayer's property, both real and personal. Therefore, the IRS has had a tax lien against Rogelio Suarez's property since November 11, 1991, the date of the first assessment. However, Section 6323(a) of the Internal Revenue Code provides that the lien imposed by Section 6321 *is not valid* against "any purchaser, holder of a security interest, mechanic's lien, or judgment lien creditor until notice thereof ... has been filed...." Debtor argues that his interest in his residence is superior to the tax lien of the IRS because he was a "judgment lien creditor" by virtue of the Final Order and Final Judgment entered in the divorce proceedings and recorded in the Official Records of Dade County, Official Records Book 15290, Page 2643 on December 4, 1991, before the IRS filed its notice of tax lien.[5]

The Regulations define a "judgment lien creditor" as

a "person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money." 26 C.F.R. § 301.6323(h)–1(g).

In the case of real property, the regulations state:

If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring

---

**5.** A creditor that achieves the status of "judgment lien creditor" before the filing of the government's Notice of Federal Tax Lien has priority over the United States regarding property sub-

ject to the judgment lien, even if the tax assessments which perfected the tax lien occurred before judgment was rendered. *Central Bank v. United States,* 833 F.Supp. 892 (M.D.Fla.1993).

liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. 26 C.F.R. § 301.6323(h)–1(g).

The terms "lien" and "judicial lien" are also defined by the Bankruptcy Code. A "judicial lien" is a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. 11 U.S.C. § 101(36). A "lien" is a charge against or interest in property to secure payment of a debt or performance of an obligation. 11 U.S.C. § 101(37).

To decide if Debtor has a "judicial lien," the Court must first decide if the Final Order and Final Judgment obtained in the divorce proceedings created a "lien" at all. In re Elkhatib, 108 B.R. 650 (Bankr.N.D.Ill. 1989).

■■■ A divorce decree has the effect of either extinguishing or reordering pre-existing property interests of the parties and creating new interests in the place of the old. In re Wells, 160 B.R. 726 (Bankr.N.D.N.Y. 1993); see also, Farrey v. Sanderfoot, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); In re Steffen, 1992 WL 308378 (Bankr.N.D.Iowa May 12, 1992). In the instant case, Debtor was awarded sole title to the marital residence pursuant to the Final Order and Final Judgment. The Final Judgment does not give Debtor a charge against or interest in property to "secure payment of a debt or performance of an obligation." Rather it is an order "reordering pre-existing property interests of the parties and creating new interests in place of the old." In re Wells, 160 B.R. 726 (Bankr.N.D.N.Y.1993) Therefore, as a matter of law, the Final Order and Final Judgment on All Economic Issues did not create a "lien" at all.

■■■ Moreover, even if the Court determined the Final Order obtained in the divorce proceedings created a lien, it would not have the choateness necessary to allow it priority over the federal tax lien. "[T]he fact that a lien was perfected before a federal tax lien was recorded does not necessarily entitle it to priority over the federal tax lien. To enjoy priority, the previous lien also must be

sufficiently choate under federal law." United States v. Brynes, 848 F.Supp. 1096 (D.R.I. 1994); see also, United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). The concept of choateness relates to the specificity and identifiability of a lien. Liens "may also be perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." New Britain, supra, at 84, 74 S.Ct. at 369.

Here the Final Order would not have the choateness necessary to allow it priority over the federal tax lien because the amount of the lien is not established. Nor could it ever be established since there is no debt to be secured by a lien, just the redistribution of an interest in property.

Accordingly, the Court determines Debtor is not a judgment lien creditor within the meaning of § 6323(h)(6).

### B.  AVOIDANCE OF LIENS

After a taxpayer files a title 11 petition, the presence or absence of a recorded Notice of Federal Tax Lien will control how the IRS's claim is treated in the bankruptcy case. A "secret" or unrecorded tax lien under I.R.C. § 6321 is an unsecured claim in a title 11 case and may be avoided.

■■■ Plaintiffs argue that any lien held by the IRS is avoidable. The IRS argues that as a Chapter 13 debtor, Debtor does not have the power to exercise the avoidance powers granted to trustees in Sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code. The IRS submits that Debtor's avoidance power is specifically limited to exempt property as provided under § 522(h) which is to be read in conjunction with § 522(c)(2)(B). In re Perry, 90 B.R. 565, 566 (Bankr.S.D.Fla. 1988) (chapter 13 debtor can only avoid liens and other transfers as to exempt property).

Since the issue of a chapter 13 debtor's standing to utilize the voiding powers granted to a trustee was first addressed in 1980, courts have not developed a uniform resolution of this issue. For instance, several courts have held that the chapter 13 debtor may utilize the special voiding power granted by Section 544. In re Boyette, 33 B.R. 10

(Bankr.N.D.Tex.1983); *In re Einoder*, 55 B.R. 319 (Bankr.N.D.Ill.1985); *In re Ottaviano*, 68 B.R. 238 (Bankr.D.Conn.1986); *In re Weaver*, 69 B.R. 554 (Bankr.W.D.Ky.1987); *In re Colandrea*, 17 B.R. 568 (Bankr.D.Md. 1982).

However, many cases have held that a chapter 13 debtor lacks standing to bring avoidance actions. *In re Tillery*, 124 B.R. 127 (Bankr.M.D.Fla.1991); *In re Bruce*, 96 B.R. 717 (Bankr.W.D.Tex.1989); *In re Mast*, 79 B.R. 981 (Bankr.W.D.Mich.1987). In *In re Tillery*, *supra*, Judge Paskay receded from his earlier decision in *In re Hall*, 26 B.R. 10 (Bankr.M.D.Fla.1982), that a chapter 13 debtor may utilize the special voiding power granted by § 544, and determined that a chapter 13 debtor lacks the power to use the lien avoidance power of § 544.

The Court also is aware of Judge Britton's decision in *In re Perry*, 90 B.R. 565 (Bankr. S.D.Fla.1988), wherein the court ruled that a chapter 13 debtor can only avoid tax liens and other transfers as to exempt property. In *In re Perry* the court determined that Congress did not intend to grant chapter 13 debtors the trustee's power to avoid tax liens.

This Court notes, however, that Section 103 of the Bankruptcy Code specifically provides that the provisions of Chapter 5 of the Bankruptcy Code are provisions of general applicability and apply to any case filed under Chapter 7, Chapter 11, Chapter 12 or Chapter 13.[6]

Nevertheless, the Court need not address this issue at this time since even under *Perry* Debtor can avoid unperfected liens as to exempt property. *In re Perry*, *supra*, [chapter 13 debtor can only avoid tax liens and other transfers as to exempt property (Section 522 of the Bankruptcy Code)].

Section 522(c)(2)(B) provides:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except—

(2) a debt secured by a lien that is—

(B) a tax lien, **notice of which is properly filed**

§ 522(c)(2)(B) (emphasis added).

As set forth in Debtor's schedules, Debtor elected the exemptions to which he was entitled under Section 522(b)(2) (exemptions available under applicable non-bankruptcy federal laws and state or local laws) thereby exempting his homestead under Fl. Const. Art. X, Sec. 4. Accordingly, because the IRS did not properly file its notice of tax lien to secure the tax liabilities until *after* Debtor filed his bankruptcy petition, said liens would not be valid against debtor's real property under Section 522(c)(2)(B).

### C. CONCLUSION

The Court's review of applicable law compels the conclusion that the tax liens at issue are avoidable as to Debtor's exempt property under the Bankruptcy Code and the IRS therefore does not hold a valid lien for federal income taxes for tax years 1984–1990 on Debtor's exempt property.

This memorandum decision contains the agreed upon facts and the Court's conclusions of law. A separate Final Judgement will be entered in conformity with this decision in accordance with Bankruptcy Rule 9021.

---

**6.** § 103   Applicability of chapters
   (a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title.