**In re Ronald and Linda HOEKSTRA, Debtors.**

**Ronald and Linda Hoekstra, Plaintiffs–Appellees,**

**v.**

**United States of America, Defendant–Appellant.**

**Bankruptcy No. 99–12361–SSM.**
**CIV.A. No. 00–1115–A.**
**Adversary No. 99–1297–SSM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 7, 2000.

---

Steven B. Ramsdell, Tyler, Bartl, Burke & Albert, Alexandria, VA, for Plaintiff.

Jason S. Zariin, Trial Attorney—Civil Trial Section—Eastern Region—Tax Division, United States Department of Justice, Richmond, VA, for Defendant.

### MEMORANDUM OPINION

LEE, District Judge.

THIS Matter is before the Court on appeal from the Bankruptcy Court's Order granting summary judgment for Plaintiffs–Appellees Ronald and Linda Hoekstra. The issue before this Court is whether the Court should affirm the bankruptcy court's decision finding that the United States' federal tax lien against the Hoekstras' property is void for lack of value in the Hoekstras' townhouse.

The Hoekstras own a townhouse in Alexandria, Virginia that is subject to four liens. The United States is a creditor in interest to a federal tax lien against the

Hoekstras' real and personal property, which includes the townhouse. The United States' lien against the townhouse is third in priority.[1] The Hoekstras argued to the bankruptcy court that the federal tax lien against the townhouse should be voided because the first two liens against the townhouse exceeded the value of the townhouse. The bankruptcy court agreed, and held that the federal tax lien was void because there was no value in the townhouse to which the lien could attach. The United States appealed to this Court.

For the reasons stated below, this Court holds that the decision of the bankruptcy court should be and is REVERSED. The Court holds that the United States' federal tax lien is only undersecured, and therefore not void.

## I. Factual and Procedural Background

Plaintiffs–Appellees Ronald and Linda Hoekstra ("Debtors"), husband and wife, reside in a townhouse located at 2318 Sanford Street, Alexandria, Virginia ("Townhouse").[2] The Townhouse is subject to the following liens in order of priority: (1) a first-lien deed of trust held by First Union National Bank, upon which Debtors owed $192,191.24 as of the filing date of the Chapter 7 petition; (2) a second-lien deed of trust held by Emily M. Glaub, upon which Debtors owed $41,960.00; (3) federal tax liens for unpaid 1990 and 1992 federal income taxes, upon which Debtors owed $29,626.00; and (4) homeowner's association liens held by Oak Cluster Community Council, upon which Debtors owed $9,568.67. The fair market value of the Townhouse is $210,000.00. The sum of the value of the first two liens equals $234,151.24; this value exceeds the value of the Townhouse. Therefore, the first two liens exhaust the value of the Townhouse, leaving no value underlying the homeowners'

association lien and the federal tax lien against the Townhouse.

Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia on May 6, 1999. No plan was confirmed, and Debtors converted their case to Chapter 7 bankruptcy on August 6, 1999. The trustee filed a report of no distribution, and Debtors received a discharge of their dischargeable debts on December 3, 1999.

Debtors brought an action in bankruptcy court on November 8, 1999 seeking to avoid the federal tax liens and the homeowners' association liens. Debtors asserted that the liens were void under 11 U.S.C. § 506(d), because there was no value in the property to which the liens could attach. Asserting that there were no genuine issues of material fact, both the United States ("Creditor") and Debtors filed motions for summary judgment. The bankruptcy court entered an Order on May 5, 2000 granting the Debtors' motion for summary judgment and denying Creditor's motion for summary judgment. The bankruptcy court held that the federal tax liens and the homeowners' association liens were void because there was no value in the Townhouse to which the liens could attach.

The bankruptcy court relied on the sections of the Bankruptcy Code codified in 11 U.S.C. §§ 506(a) and (d) to arrive at its decision. The bankruptcy court first noted that the general rule in bankruptcy is that a creditor whose claim is secured by property which is worth less than the amount of the debt is treated as being secured only to the extent of the value of the collateral, with the balance of the claim being treated as unsecured. *See In re Hoekstra*, 253 B.R. 193, 195 (Bankr.

---

1. The Oak Cluster Community Council held a homeowners' association lien that was fourth in priority against the property. Oak Cluster Community Council does not appeal the bankruptcy court's decision voiding the homeowners' association lien.

2. The legal description of the property is Lot 25, Oak Cluster subdivision, City of Alexandria, Virginia.

E.D.Va.2000) (unpublished memorandum opinion). This rule is derived from § 506(a) of the Bankruptcy Code, which provides in relevant part:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (1993). The bankruptcy court then noted that § 506(d) provides that:

> (d) [t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void.

*See In re Hoekstra,* 253 B.R. 193, 195 (citing 11 U.S.C. § 506(d)). The court noted that, despite the fact that § 506(a) states that a portion of a creditor's claim is unsecured if the property underlying the claim does not meet the full value of the claim, the Supreme Court had held that the unsecured portion of the claim was not void under § 506(d), and that therefore a court could not reduce, or "strip down," [3] the creditor's claim to the value of the collateral underlying the lien. *See Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The court noted that the property underlying the lien in *Dewsnup* had not depreciated to $0.00, and therefore still had value; while the Townhouse underlying the lien in this case had $0.00 value, having been completely exhausted by the first two priority liens. The bankruptcy court therefore distinguished *Dewsnup* from this case, holding that *Dewsnup* prohibited only a "strip down" of an undersecured claim, and not a "strip off" of a wholly unsecured claim. *See In re Hoekstra,* 253 B.R. 193, 195 Consequently, the bankruptcy court found that *Yi v. Citibank (Maryland), N.A.,* 219 B.R. 394 (E.D.Va.1998), was the proper case under which to evaluate Debtors' effort to avoid the federal tax lien against the Townhouse.

The bankruptcy court relied on *Yi* to hold that Creditor's claims were void under 11 U.S.C. § 506(d) because they were wholly unsecured under 11 U.S.C. § 506(a). *See In re Hoekstra,* 253 B.R. 193, 195 (citing *Yi,* 219 B.R. at 399–400). The court found that the lien was wholly unsecured as per the language of § 506(a), due to the fact that "the value of [the] creditor's interest ... [was] less than the amount of [the] allowed claim." 11 U.S.C. § 506(a) (defining the extent to which a claim is unsecured). Upon finding the lien to be wholly unsecured, the court held that the lien was void pursuant to the language of § 506(d), because the lien was "not an allowed secured claim." *See In re Hoekstra,* 253 B.R. 193, 195 (citing 11 U.S.C. § 506(d)).

The bankruptcy court rejected *Dewsnup's* application to this case, observing that in *Yi,* the only published decision in this District addressing the issue of Chapter 7 lien stripping, the United States District Court reversed a bankruptcy court ruling that dismissed a Chapter 7 action to strip off a wholly unsecured third deed of trust. *See id.* at 5; *Yi,* 219 B.R. at 399, 402. The bankruptcy court's ruling that this District reversed in *Yi* had relied on *Dewsnup. See Yi,* 219 B.R. at 396. Therefore, the bankruptcy court in this case concluded that *Dewsnup* did not apply to this case and did not prohibit the court from "stripping off" Creditor's federal tax lien as against the Townhouse. The bankruptcy court issued its Final Judgment Avoiding

---

**3.** "Strip down" refers to decreasing a creditor's lien to a judicially-determined value of the collateral, to the extent that the fair market value of the collateral is less than the claim, while still maintaining the lien. "Strip off" refers to the total erasure or voiding of a debt.

and Releasing Liens on May 31, 2000. Creditor appeals.

Creditor argues that the bankruptcy court inappropriately relied on *Yi* as precedent providing for the complete "strip-off" of Creditor's tax lien in this case. Creditor contends that the bankruptcy court should have followed the Supreme Court's holding in *Dewsnup v. Timm.* Creditor contends further that the bankruptcy court inappropriately disregarded the fact that both the real property and Debtors' personal property secure the federal tax lien. Creditor asserts that security by the personal property makes the lien undersecured, not unsecured. Accordingly, *Dewsnup* and its successor cases prevent Debtors from stripping down the federal tax lien. *See, e.g., Crossroads of Hillsville v. Payne,* 179 B.R. 486, 490 (W.D.Va.1995) (prohibiting the stripping down of liens in Chapter 7 bankruptcies); *Rombach v. United States,* 159 B.R. 311, 313–14 (Bankr.C.D.Cal.1993) (prohibiting stripping down of liens in Chapter 7); *In re Doviak,* 161 B.R. 379, 380–81 (Bankr. E.D.Tex.1993) (prohibiting stripping down of liens in Chapter 7).

## II. Standard of Review

■ A district court should set aside findings of fact by a bankruptcy court only if they are clearly erroneous. *See* FED. R. BANKR. P. 8013; *In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992). The district court must give questions or conclusions of law *de novo* review. *See Johnson,* 960 F.2d at 399; *Crossroads of Hillsville,* 179 B.R. at 488. There were no disputed issues of material fact in the bankruptcy proceeding. *See In re Hoekstra,* 253 B.R. 193, 194. Therefore, this Court must give *de novo* review to the legal issues raised here.

## III. Analysis of Law

■ This Court agrees with the United States that the Supreme Court case *Dewsnup v. Timm* governs the outcome of this case. The *Dewsnup* case involved an attempt by a Chapter 7 debtor to "strip-down" the value of a lien to reflect the fair market value of abandoned [4] real property. *Dewsnup,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903. The debtor had secured a loan on a parcel of land for $120,000. After defaulting on the loan and filing for bankruptcy under Chapter 7, the debtor sought to avoid the portion of the $120,000 loan that exceeded the $39,000 value of the depreciated property. Just as Debtors attempt to do in this case, the debtor in *Dewsnup* proposed to utilize § 506(a) of the Code to establish the extent to which the lien was secured, and § 506(d) to void the remainder of the lien. *See id.* at 413, 112 S.Ct. 773. The Supreme Court rejected this argument, holding that § 506(a) and § 506(d) need not be read as "rigidly tied" to each other. *See id.* at 415, 417, 112 S.Ct. 773. "Rather, the words [in § 506(d)] should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured." *Id.* at 415, 112 S.Ct. 773 (setting forth the respondent's argument, with which the court agreed). The *Dewsnup* Court held that the debtor could not avoid the unsecured portion of the lien because the lien was both allowed under § 502 and secured by the collateral. It did not matter that the value of the collateral was less than the value of the lien. *See id.* at 417, 112 S.Ct. 773; *see also Yi,* 219 B.R. at 396; *In re Doviak,* 161 B.R. at 380 (summarizing and interpreting *Dewsnup*).

The bankruptcy court did not recognize *Dewsnup's* application to this case because this case presents a situation unique from

---

4. Property is "abandoned" under § 554 of the Code. Upon abandonment, the trustee in bankruptcy is divested of control of the property because it is no longer part of the debtor's estate. Abandonment constitutes a divestiture of all of the estate's interests in the property. Property may be abandoned to any party with a possessory interest in it (e.g., the debtor or the secured creditor). *See* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] (Lawrence P. King ed., 15th ed. rev.1999). A trustee is permitted to abandon property that is burdensome to the estate. *See id.* at ¶ 554.02[1].

the situation in *Dewsnup,* as well as that in *Yi.* *Dewsnup* involved an effort to decrease, or "strip down," a lien to a value equal to the then decreased value of the property underlying the lien. *Yi* involved an effort to void a lien on the grounds that absolutely no value remained in the property underlying the lien. This case presents the unique circumstance of an effort to void a federal tax lien only as to the real property underlying the lien which has no remaining value, where the lien encompasses more than one property and includes the debtor's personal property. Because Debtors seek to avoid a portion of a lien that still has value in underlying collateral, this case presents a "strip down" situation more analogous to *Dewsnup* than to *Yi.*

The bankruptcy court relied on its reading of 11 U.S.C. §§ 506(a) and (d) and *Yi,* 219 B.R. 394, in holding that Creditor's lien against the Townhouse was void due to the lack of value of Creditor's equity of redemption. The instant case is distinguishable from *Yi* in important respects. In *Yi,* as here, the residential property in question was subject to several liens. *See Yi,* 219 B.R. at 395 (property subject to three liens). Appellee Citibank (Maryland) N.A. held the third lien in priority. Citibank's lien was wholly unsecured because the amount of the claims secured by the first and second deeds of trust exceeded the value of the property. When the debtors sought to avoid Citibank's lien, the bankruptcy court in *Yi* dismissed the complaint for failure to state a claim, relying on the Supreme Court's holding in *Dewsnup* as controlling and dispositive authority. *See id.* (citing *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903). The *District* court reversed the bankruptcy court, finding that *Dewsnup* was not dispositive because "stripping off" a lien was different from "stripping down" a lien. *See id.* at 397. The *Yi* court held that Citibank's lien was void. *See id.* at 399. *Yi* and its progeny can be distinguished from this case, because *Yi* involved a private loan against property, *see Yi,* 219 B.R.

at 395, and *Yi's* progeny involved mortgage loans, *see, e.g., Farha v. First American Title Insurance,* 246 B.R. 547, 548–50 (Bankr.E.D.Mich.2000); *Zempel v. Household Finance Corp.,* 244 B.R. 625, 627, 629 (Bankr.W.D.Ky.1999). Those loans are particular to the named property subject to those liens; in the case of a mortgage, the equity in the lien is measured by the value of the house, condominium, etc., that is subject to the lien. In this case, the federal tax lien attached not only to a residence, but also to Debtors' personal property.

■ The bankruptcy court's misplaced reliance on *Yi* resulted from the court's misapprehension of the impact of the three different circumstances under which parties have sought to avoid liens. The bankruptcy court interpreted the facts presented in this case as similar to those in *Yi* by treating Creditor's federal tax lien as distinct and individual liens as to each component of property underlying the lien. The court concluded that "for the purpose of lien avoidance, each item of collateral must be viewed individually ... The avoidance of the lien as to that particular parcel does not affect or impair the lien of Creditor as to any other property to which it may have attached." *In re Hoekstra,* 253 B.R. 193, 195. However, the Internal Revenue Code and case law make clear that a federal tax lien is not divisible in this context.

■ The lien that Creditor has is a lien for taxes under the Internal Revenue Code, 26 U.S.C. § 6321 (1995). Section 6321 provides that:

> [i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. This language makes clear that the value of a federal lien for taxes is the sum of all the property that is subject to the lien. Section 6321 does not

state that there shall be "liens" upon a debtor's real and personal property; it states that there shall be "a lien," or a single lien. Language in *Mulligan v. United States* demonstrates that a federal tax lien under 26 U.S.C. § 6321 is a single lien: "Defendant obtained *a statutory lien* under section 6321 *on all the Plaintiff's property." Mulligan v. United States,* 234 B.R. 229, 232 (Bankr.D.N.H.1999) (emphasis added); *see also* 5 COLLIER ON BANKRUPTCY ¶ 545.03[4] ("A federal tax lien arises and attached to all the taxpayer's property and rights to property, real and personal."). Therefore, even if one or more properties subject to Creditor's lien is without value, if any of the property retains value, Debtors cannot bifurcate Creditor's undersecured claim into secured and unsecured claims. *See Rombach,* 159 B.R. at 313 (preventing creditors from bifurcating a nonconsensual federal tax lien and holding that the lien could not be "stripped down" to the value of the property subject to the lien). Under § 506(a), a claim is secured "to the extent of the value of [the] creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Thus, Creditor's lien against Debtors is undersecured in the amount of $29,626.00 (the unpaid 1990 and 1992 federal income taxes) minus the value of Debtors' personal property. Consequently, this case presents a "strip down" situation that must be analyzed under *Dewsnup.*

■ The *Dewsnup* court held that § 506(d) does not void a claim that has been "allowed pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral." *Dewsnup,* 502 U.S. at 414–15, 112 S.Ct. 773. Because the creditor's lien in *Dewsnup* could still be partially satisfied by the fair market value of the property in that case, the court found that the creditor's lien was secured under § 506(a). *See id.* at 415–17, 112 S.Ct. 773. The instant case

is similar in that Creditor's lien is partially secured under § 506(a). Again, § 506(a) provides that a claim is secured "to the extent of the value of [the] creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Debtors have not disputed that Creditor's federal tax lien was an allowed claim. Nor have Debtors disputed that value remains in Debtors' personal property that is subject to the federal tax lien. Therefore, a component of Creditor's lien, as against the Townhouse, is wholly unsecured, but the federal tax lien is still partially secured by Debtors' personal property. Because there remains "recourse to collateral" underlying the United States' federal tax lien, the lien is not void. *See Crossroads of Hillsville,* 179 B.R. at 490 (interpreting *Dewsnup,* 502 U.S. at 415–17, 112 S.Ct. 773, to define "allowed secured claim" in § 506(d) to mean "any lien that is an allowed claim and also secured by underlying collateral regardless of the collateral's value"). This holding is supported by *Dewsnup's* successor cases, which hold that a lien cannot be avoided unless the lien has been disallowed or is not secured by *any* collateral. *See, e.g., Yi,* 219 B.R. at 397 (stating that the Court in *Dewsnup* held the existence of some collateral sufficient to render the lien a secured claim, notwithstanding that the collateral's value is less than the value of the lien); *Crossroads of Hillsville,* 179 B.R. at 490; *Rombach,* 159 B.R. at 314 (involving a federal tax lien). Therefore, the "strip down" prohibited by the Supreme Court is also prohibited in the situation presented here. Considering this in connection with the differences between this case and the situation presented in *Yi,* this Court must reverse the bankruptcy court's Final Judgment Avoiding and Releasing Liens in the matter of Ronald and Linda Hoekstra.

### IV. Conclusion.

The Supreme Court in *Dewsnup* established the firm rule that a claim that is not

void, but only undersecured, cannot be "stripped down." The debtors in *Dewsnup* sought to avoid a portion of a lien where the underlying collateral still had value. This is the same situation presented in the instant case; Creditor's federal tax lien against Debtors is undersecured because the Townhouse has no value.

Debtors' circumstances here are distinguishable from the debtors in *Yi*, who sought to avoid an entire lien where the underlying collateral had no value. Debtors here seek to avoid a portion of a lien where a component of the collateral has no value but other components of collateral have value. The *Dewsnup* Court's clear prohibition against "stripping down" liens leads this Court to reverse the bankruptcy court's judgment voiding Creditor's lien against the Townhouse.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.